SMOKY GREENHAW COTTON CO.,
INC., and John C. Greenhaw,
Plaintiffs-Appellants, Cross-Appellees,

v.

MERRILL LYNCH, PIERCE, FENNER
AND SMITH, INC., et al.,
Defendants-Appellees, Cross-Appellants.

No. 85–1310.

United States Court of Appeals,
Fifth Circuit.

March 28, 1986.

Opinion on Denial of Rehearing and
Rehearing En Banc May 13, 1986.

David Greenhaw, Odessa, Tex., for plaintiffs-appellants, cross-appellees.

James P. Boldrick, Midland, Tex., for defendants-appellees, cross-appellants.

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Plaintiffs and appellants Smoky Greenhaw Cotton Co., Inc. and John C. Greenhaw (Greenhaw) appeal from the District Court's judgment that, among other things, ordered arbitration of their Commodities Exchange Act and pendent state law claims after a jury had found for the plaintiffs on those claims. Defendants and cross-appellants Merrill Lynch, Pierce, Fenner & Smith, Inc. and Charles D. and Margaret Scott appeal from the judgment for the plaintiffs on their securities claims. We reverse the District Court's judgment ordering the parties to arbitrate their nonse- curities claims, and we affirm the entry of judgment on the plaintiffs' securities claims. In addition, we affirm the District Court's grant of j.n.o.v. on the plaintiffs' exemplary damages verdict, and remand for a new trial on the plaintiffs' RICO count.

## Wish I was Hedging in the Land of Cotton

John C. Greenhaw, a West Texas cotton ginner, began trading commodities with Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) account executives Charles and Margaret Scott in 1977. He used the commodities account to hedge on the cotton market. Originally, the account was opened in the name of Lenorah Gin Company, an enterprise in which Greenhaw was a shareholder. Later, in 1979, Greenhaw opened two personal trading accounts, one to trade in commodities and the other in securities. In December 1980, Greenhaw's Smoky Greenhaw Cotton Company, Inc. (the Cotton Company), a cotton broker, also opened a commodities and securities account. When Greenhaw opened his and the Cotton Company's commodities trading accounts, he signed a standard form agreeing to submit all disputes regarding the accounts to arbitration.[1]

1. The agreements establishing the securities trading accounts did not contain a similar arbitration provision. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that a predispute agreement to arbitrate claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), was not enforceable. The 1933 Act declares "void" any "stipulation" waiving compliance with any "provision" of the Act. *See* 15 U.S.C. § 77n. The Court held that an agreement to arbitrate amounted to a stipulation waiving the right to a judicial remedy and was therefore void. 346 U.S. at 434–35, 74 S.Ct. at 186, 98 L.Ed. at 175.

Although later Supreme Court pronouncements have questioned the applicability of *Wilko* to claims arising under the Securities Exchange Act of 1934, *see Scherk v. Alberto Culver Co.*, 417 U.S. 506, 513–14, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974); *see also Dean Witter Reynolds, Inc. v. Byrd,* — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (White, J., concurring), this Court and many other lower courts consistently have extended *Wilko's* reasoning to the 1934 Act. *See Sibley v. Tandy Corp.*, 543 F.2d 540, 543 n. 3 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

We observe in passing that the great weight of authority has rejected extending the principle of *Wilko v. Swan* to claims arising under the Commodity Exchange Act. These cases explicitly or implicitly have affirmed the right to arbitrate commodities claims. *See, e.g., Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446, 1449–50 (5th Cir. 1983); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459, 460 (3d Cir.1982); *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216, 225 n. 12 (6th Cir.1980), *aff'd on other grounds sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1181 (2d Cir.1977); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1199–1200 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978).

The commodities accounts were nondiscretionary, i.e., Merrill Lynch's broker could make trades in those accounts only with Greenhaw's authorization. The securities accounts were discretionary. Their trades required no preauthorization, and the broker could buy and sell stocks for investment purposes and to meet margin requirements.

In September 1982, Greenhaw sued Charles Scott and Merrill Lynch, charging among other things that Scott had made unauthorized trades in the Cotton Company's commodities account. The complaint purported to state claims under § 4b of the Commodity Exchange Act, 7 U.S.C. § 6b, § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and various Texas statutory provisions and common law doctrines. Merrill Lynch answered and moved for a stay pending arbitration as provided by the commodities account agreement. The District Court granted the stay pending arbitration, but this Court reversed. *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446 (5th Cir.1983) (*Greenhaw I*). We held that where the issues underlying nonarbitrable securities claims [2] and otherwise arbitrable claims are necessarily "intertwined," a court "'should deny arbitration in order to preserve its exclusive jurisdiction over the Federal Securities Act claims.'" *Greenhaw I*, 720 F.2d at 1448, *quoting Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). *Accord Sawyer v. Raymond, James & Assocs., Inc.*, 642 F.2d 791, 792–93 (5th Cir. 1981) (applying intertwining doctrine to affirm denial of motion to compel arbitration). Consequently, we ordered the District Court to try all of the plaintiffs' claims together.

On remand, Greenhaw intervened personally and added Margaret Scott as a defendant. He also added a count under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

At trial, Greenhaw and the Cotton Company [3] introduced evidence that Merrill Lynch made unauthorized trades in the commodities accounts, "churned" the accounts,[4] and left open trades that would later be assigned to the accounts of the Scotts or an unrelated, non-Greenhaw customer if profitable or to Greenhaw's accounts if unprofitable. After the evidence was presented to the jury, the District Court granted Merrill Lynch a directed verdict on the RICO claim. All other claims were submitted to the jury in the form of special interrogatories.[5]

The jury specifically found that Merrill Lynch violated the Commodities Exchange Act by conducting unauthorized trades, violated the Securities Exchange Act of 1934, and willfully and wantonly breached a fiduciary duty owed to Greenhaw and his company. The jury found damages as follows:

| Damages Item | Amount |
|---|---|
| 1. Commodities violation | |
| (i) to Greenhaw | $ 36,925 |
| (ii) to the Cotton Co. | 149,602 |
| 2. Securities violations | |
| (i) to Greenhaw | 697 |
| (ii) to the Cotton Co. | 4,223 |
| 3. Breach of fiduciary duty (compensatory) | |
| (i) to Greenhaw | 36,925 |
| (ii) to the Cotton Co. | 149,602 |
| 4. Breach of fiduciary duty (exemplary) | |
| (i) to Greenhaw | 25,000 |
| (ii) to the Cotton Co. | 100,000 |

After the jury returned its verdict, the District Court granted a j.n.o.v. on the exemplary damages, finding no evidence to

---

**2.** *See supra* note 1.

**3.** For the sake of simplicity, the plaintiffs will hereinafter be referred to in the singular as "Greenhaw" except where it is necessary to distinguish them. Similarly, the defendants will be referred to as "Merrill Lynch" subject to the same qualification.

**4.** Churning describes the practice of making excessive trades on behalf of an account merely to generate commissions.

**5.** F.R.Civ.P. 49(a).

support the claim of a willful and wanton breach of a fiduciary duty.

Greenhaw submitted a proposed judgment in accordance with the jury verdict as modified, but before the District Court entered the judgment, the Supreme Court rejected the intertwining doctrine relied on by the Court in Greenhaw I. *Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Supreme Court held that even where arbitrable claims are intertwined with nonarbitrable securities claims, the Arbitration Act, 9 U.S.C. §§ 1–14, requires district courts to compel arbitration of the arbitrable claims. The "preeminent" rationale behind the *Dean Witter Reynolds* decision was that courts should enforce arbitration agreements as part of the parties' legitimate contractual expectations. —— U.S. at ——, 105 S.Ct. at 1242, 84 L.Ed.2d at 164. Consequently, when the District Court entered judgment, it entered the jury's verdict on the securities claims (items 2(i) and (ii) *supra*) but it referred the commodities claims (items 1(i) and (ii)) and the breach of fiduciary duty claims (items 3 and 4) to arbitration.

Greenhaw now appeals the submission of the commodities and fiduciary claims to arbitration, the grant of j.n.o.v. on the exemplary damages claims, and the entry of a directed verdict on the RICO claims. Merrill Lynch appeals the entry of judgment on the securities claims.

### The Securities Claims

We first consider Merrill Lynch's appeal from the entry of judgment against it on the securities law claims. It asserts that there was insufficient evidence to submit the securities claims to the jury. Specifically, it asserts that there was no evidence of a securities violation, no evidence with regard to damages sustained by Greenhaw, and no evidence that Merrill Lynch and the Scotts jointly violated the securities laws.

The only securities in this case were Merrill Lynch's Ready Asset Funds accounts. It was into these accounts that profits from Greenhaw's commodities accounts were transferred in order to purchase securities that would generate returns for Greenhaw; it was also from these accounts that securities were sold to generate funds to meet margin calls in Greenhaw's commodities accounts.

Section 10(b) of the Securities Exchange Act of 1934 generally forbids the use of any manipulative or deceptive device in connection with the purchase or sale of any security. *See* 15 U.S.C. § 78j(b). Rule 10b–5, 17 C.F.R. § 240.10b–5, provides that

[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Viewing the evidence in the light most favorable to Greenhaw, as we must with a jury verdict, it is clear that Greenhaw established the necessary elements needed to prove a Rule 10b–5 violation. There was evidence for a jury to find that Merrill Lynch engaged in a fraudulent scheme of making unauthorized commodity trades in Greenhaw's accounts. Merrill Lynch occasionally liquidated portions of the plaintiffs' Ready Asset Funds accounts to finance the unauthorized trades. Merrill Lynch used the telephone lines and the facilities of a national securities exchange to execute its scheme. Finally, in light of the broad interpretation that the courts lend to the "in connection with" requirement, *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128, 134

(1971); *Alley v. Miramon,* 614 F.2d 1372, 1378 n. 11 (5th Cir.1980), we hold that the record demonstrates a sufficient connection between Merrill Lynch's fraud and the sale of the securities.

 Merrill Lynch also challenges the sufficiency of the evidence with regard to damages from the securities law violations. The traditional measure of damages in a Rule 10b–5 action is the "out of pocket rule," *Huddleston v. Herman & MacLean,* 640 F.2d 534, 554–56 (5th Cir.1981), *rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Miley v. Oppenheimer & Co.,* 637 F.2d 318, 327–28 (5th Cir.1981). Greenhaw introduced expert testimony concerning foregone interest on the monies lost through unauthorized trades computed at the Merrill Lynch Ready Asset Funds rate. From this information, a jury could arrive at an acceptable estimate of Greenhaw's damages from the securities violations.[6] Thus, we cannot say that the damages amounts are without support in the record.

 Finally, in light of the undisputed employer-employee relationship between Merrill Lynch and the Scotts, we find no merit in Merrill Lynch's challenge to the sufficiency of the evidence supporting the specific jury finding that it and the Scotts jointly violated the securities laws.

### Arbitrary Arbitration

 Greenhaw contends that collateral estoppel, res judicata, the law of the case doctrine, and waiver by Merrill Lynch of its right to arbitration preclude the trial judge's order requiring reference to Greenhaw's case to arbitration. Recharacterizing this contention to make it meaningful in terms of appellate review, we hold that, regardless of what decision would have been correct in advance of a trial, it was an abuse of the trial judge's discretion to order arbitration here.

The crux of Greenhaw's contention is that the *Dean Witter Reynolds* opinion

should not be applied retroactively to this case because the jury had reached its verdict before the Supreme Court issued its opinion. The parties agree that *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), outlines the proper method for addressing this issue. In *Chevron Oil,* the Supreme Court formulated a three-part analysis for determining when judicial decisions should be given nonretroactive application.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–07, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (citations omitted). Upon consideration of each of these factors, we agree with Greenhaw that the *Dean Witter Reynolds* opinion should not be applied retroactively to this case.

Although the *Dean Witter Reynolds* decision was not entirely unexpected since it resolved a longstanding split among the circuit courts regarding the intertwining doctrine, it overruled clear Fifth Circuit precedent on which the trial court and both parties relied. In fact, it is impossible to imagine clearer precedent than this Court's earlier holding applying the intertwining doctrine to this very litigation. *Greenhaw I,* 720 F.2d at 1448. Even at the time suit was brought, the intertwining doctrine

---

**6.** Merrill Lynch does not advance any specific contention about why Greenhaw's method of proof of damages was inappropriate or the result unreasonable.

clearly was the law in the Fifth Circuit. *Sibley v. Tandy Co.*, 543 F.2d 540 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). Thus, the first of the three *Chevron Oil* factors cuts in favor of nonretroactive application here of *Dean Witter Reynolds.*

The second *Chevron Oil* factor requires us to determine whether, in light of the past history of the interaction between federal securities law and the Arbitration Act, the purpose and effect of the *Dean Witter Reynolds* rule would be helped or hindered by retroactive application. This in turn requires us to determine the purpose and effect of both the intertwining doctrine and the *Dean Witter Reynolds* rule.

The purpose of the now-rejected intertwining doctrine was two-fold. First, it "preserve[d the federal court's] exclusive jurisdiction over ... Federal Securities Act claims." *Sibley v. Tandy Co.*, 543 F.2d at 543. Those circuits adhering to the doctrine, including the Fifth Circuit, feared that an arbitrator making a decision on the arbitrable nonsecurities claims would be impelled to review the facts underlying the inextricably linked securities law claims. *Id.* "[A]rbitration of an 'intertwined' state claim might precede the federal [securities] proceeding and the factfinding done by the arbitrator might thereby bind the court through collateral estoppel." *Dean Witter Reynolds, Inc. v. Byrd*, 105 S.Ct. at 1240. The second purpose of the intertwining doctrine was efficiency, i.e., to avoid "bifurcated proceedings and perhaps redundant efforts to litigate the same factual questions twice." *Id.*

On the other hand, *Dean Witter Reynolds'* rejection of the intertwining doctrine was founded on "a congressional desire to enforce agreements [to arbitrate] into which parties had entered." *Id.* at 1242. The Supreme Court rejected the notion that the principal purpose of the Arbitration Act was to "promote the expeditious resolution of claims." *Id.* Indeed, that Court recognized that the result of its decision might be "the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 1241. The Supreme Court also suggested that the collateral estoppel effect of arbitration factfindings "is significantly less well settled than ... lower court opinions might suggest." *Id.* at 1243.

If the purpose of the Arbitration Act is to give effect to private agreements to arbitrate, even where those agreements necessarily result in inefficient or duplicative bifurcated proceedings, then that purpose cannot be said to be hindered by requiring Greenhaw to arbitrate issues already determined by a jury. Furthermore, the Arbitration Act's purpose would be helped by requiring Greenhaw to arbitrate as he agreed to when he executed his account agreements with Merrill Lynch. Thus, the second *Chevron Oil* factor cuts in favor of the retroactive application of the *Dean Witter Reynolds* decision.

The third *Chevron Oil* factor involves general equitable considerations—whether retroactive application "could produce substantial inequitable results." 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306. It is this factor which brings the scales firmly to rest on Greenhaw's side of the balance. The parties completed a four-day trial before a five-member jury. Merrill Lynch cannot complain that the forum was unfair or that it was denied the full protection of the legal system. Both parties went to trial expecting this to be their one and only appearance before a factfinder, and the record indicates that they waged a spirited contest. In this opinion, we deal with any alleged errors of law and further review is available if we stumble. In a nutshell, the parties, with the benefit of relatively unlimited discovery and the Federal Rules of Evidence, had a fair fight in a fair forum. It would be senseless to now require them to arbitrate issues that they have already gone to great time and expense to litigate.

Without so deciding, we might be more inclined to direct the parties to the arbitration room had this case been awaiting trial when the *Dean Witter Reynolds* opinion was handed down. However, equity demands that, where the trial has been completed, the proposed judgment rendered, and only the relatively ministerial task of approving the form of the judgment remains, Greenhaw should not be denied his victory and forced once again to battle in a different forum.

### In the Tall Cotton

In its judgment, the District Court, without elaboration, concluded that there was insufficient evidence to support the jury's grant of $25,000 exemplary damages to Greenhaw (item 4(i) *supra*) and $100,000 exemplary damages to the Cotton Company (item 4(ii) *supra*). Greenhaw appeals from

the trial judge's grant of j.n.o.v. on the jury's exemplary damages assessment.

■ The trial judge should refrain from granting j.n.o.v. unless "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A review of the record convinces us, however, that the District Court was correct in finding no evidence that Merrill Lynch "maliciously, oppressively or wantonly" defrauded Greenhaw. The mere fact that the fraud may have occurred is an insufficient basis to support an award of exemplary damages. Quite simply, Greenhaw failed to offer any evidence that Merrill Lynch or the Scotts acted with the requisite malicious intent. We therefore affirm the District Court's grant of j.n.o.v. on the exemplary damages claims.

### The RICO Claim

For the last point on appeal, Greenhaw appeals from the District Court's grant of Merrill Lynch's motion for directed verdict on Greenhaw's RICO claim. In granting the directed verdict, the trial judge declared, "This is quite obviously not a RICO claim. The proper matters even to start to become a RICO claim have not been presented to the Court." Unlike the District Court, we now have the benefit of the Supreme Court's decision in *Sedima, S.P. R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), and we are therefore compelled to disagree.

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides plaintiffs with a private civil action to recover treble damages for injury "by reason of a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c). Among the activities that constitute violations of § 1962 is the conducting of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). RICO defines "racketeering activity" to include, among others, any act "indictable" under numerous federal criminal provisions, including mail and wire fraud (so-called "predicate acts"). 18 U.S.C. § 1961(1)(B). A "pattern of racketeering

activity" is defined as two or more "acts of racketeering" occurring within ten years of each other, with at least one of those acts occurring after the passage of the RICO act. 18 U.S.C. § 1961(5).

In *Sedima*, the Supreme Court swept away many of the limitations read into RICO's statutory language by the lower courts.

> A violation of § 1962(c), the section on which *Sedima* relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962 nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured."
>
> But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by the predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

*Sedima*, —— U.S. at ——, 105 S.Ct. at 3285–86, 87 L.Ed.2d at 358–59 (footnotes and citations omitted).

■ In this case, Greenhaw's second amended complaint contains each of the allegations necessary to state a claim under RICO. At trial, Greenhaw presented evidence of numerous acts of wire fraud, acts which may constitute a pattern within the meaning of RICO.[7] Greenhaw also

---

7. Merrill Lynch argues on appeal that Greenhaw's RICO claim should have been dismissed

because a "pattern of racketeering activity" requires more than a series of acts committed in

presented evidence that the defendants participated in an illegal racketeering enterprise within the meaning of RICO. It therefore was error to withhold the RICO claim from the jury and we reverse and remand for a new trial on that claim.

As a result of our remand, the issue of the arbitrability of the plaintiffs' RICO claim undoubtedly will be raised in the District Court. Our holding *supra* that the *Dean Witter Reynolds* opinion does not apply retroactively to this case requires that we address whether those claims not passed upon by the jury before the opinion was handed down also will be subject to our holding under the unusual facts of this case.

The interaction between the RICO statute and agreements to arbitrate is apparently an issue of first impression in this Circuit. In other courts addressing the issue, an early consensus has emerged holding that RICO claims are not arbitrable. *See Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 602 F.Supp. 867, 870 (W.D.Pa.1985); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561, 567 (N.D.Calif.1984); *S.A. Mineracao da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566, 575 (S.D.N.Y.1983), *aff'd*, 745 F.2d 190 (2d Cir. 1984); *see also Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361–62 (11th Cir.1985).

■ We find the reasoning in the *S.A. Mineracao* decision to be persuasive. That court found that the public interest in the enforcement of RICO was more compelling than the policy favoring arbitration over

litigation. It compared the enforcement of the RICO law to the enforcement of the antitrust laws which is imbued with a "pervasive public interest" that makes those claims inappropriate for arbitration. 576 F.Supp. at 574–75. Given the similar strong national interest in the enforcement of RICO "which will frequently have an impact on society at large," the court concluded that Congress did not intend to entrust enforcement of RICO to arbitrators. *Id.* at 575. The Court in *S.A. Mineracao* reached its conclusion despite the doubly strong policy favoring arbitration of international disputes which were present in that case. *Id.* at 575–76.

Without deciding, we also point out the "particularly thorny problem" lurking in the possibility that Greenhaw might prevail on his remanded RICO claim. That problem is whether and to what extent treble RICO damages represent double recovery of the judgments already secured (and affirmed). *Cf. Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1169–71 (5th Cir.1984). The *Alcorn County* case emphasizes that duplicative recoveries under RICO are not to be allowed. *Id.* at 1171. As in the *Alcorn County* case, however, those issues are not before us at this time, and we do nothing more here than to alert all to their existence.

### Conclusion

We affirm the entry of judgment for the plaintiffs on the securities claims (items 2(i) and (ii)). We vacate the order referring the parties' claim to arbitration and direct the

---

furtherance of a single criminal scheme. Earlier RICO jurisprudence clearly rejected this definition of "pattern." *See, e.g., United States v. Starnes*, 644 F.2d 673, 678 (7th Cir.1981) ("the fact that there is but one objective underlying the separate acts does not diminish the applicability of RICO to those acts"), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981); *United States v. Weatherspoon*, 581 F.2d 595, 602 (7th Cir.1978) (separate mailings in pursuit of a single scheme to defraud constitute a pattern); *United States v. Salvitti*, 451 F.Supp. 195, 200 (E.D.Pa.) (series of bribes and kickbacks constituting a "single, ongoing scheme" can establish a pattern), *aff'd mem.*, 588 F.2d 822 (3d Cir. 1978).

In *Sedima*, however, the Supreme Court appeared to challenge the lower courts to develop a more rigorous interpretation of "pattern." 105 S.Ct. at 3285 n. 14, 3287, 87 L.Ed.2d at 358 n. 14, 361. Responding to or anticipating this challenge, a number of lower courts have reject-

ed the earlier broad interpretations of pattern. *See, e.g., Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831–33 (N.D.Ill. 1985) (pattern requires "continuity and relationship"; thus two fraudulent mailings in conjunction with a single kickback scheme do not constitute a pattern); *Rojas v. First Bank Nat'l Assoc.*, 613 F.Supp. 968, 971 n. 1 (E.D.N.Y.1985) ("There must be a showing of at least two acts of racketeering activity and the threat of continuing activity."); *Teleprompter of Erie, Inc. v. City of Erie*, 537 F.Supp. 6, 12–13 (W.D.Pa.1981) (pattern requires a series of incidents and schemes which are ongoing).

Given the present state of the record, we are not required to pass on this issue and express no opinion at this time. Should Greenhaw elect to retry the RICO claim, the District Court will have to consider carefully the meaning of the "pattern of racketeering activity" in the context of the facts actually developed.

District Court to enter judgment for the plaintiffs in accordance with the jury's verdict (items 1(i) and (ii) and 3(i) and (ii)), and to award the plaintiffs interest from the date of the original District Court judgment. *See* F.R.A.P. 37. We affirm the entry of j.n.o.v. on the exemplary damages claims (items 4(i) and (ii)). Finally, we remand the plaintiffs' RICO claim for a new trial.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

PER CURIAM:

In our panel opinion, *Smoky Greehaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 1281, we intimated that, on remand, the plaintiffs' RICO claim was not arbitrable. Our reasoning behind this conclusion is called into serious question by the recent Supreme Court case of *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. —, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Although *Mitsubishi* arose in an international antitrust dispute and its holding purports to be limited to that context, we believe that its broad language may carry significance for domestic disputes as well. The parties in this case should have the opportunity to argue the applicability of *Mitsubishi* to domestic RICO claims before the District Court. We therefore amend our opinion to refuse to decide the arbitrability *vel non* of the plaintiffs' RICO claim and, on remand, leave to the District Court the task of deciding that issue on the full briefing and argument of the parties.

The Petitions for Rehearings is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is DENIED.