Mel CYRAK, as Trustee for Steve King, and L.M. Smith, Plaintiffs–Appellees,

v.

Stan LEMON, Ray Kramer, and R.H. Weber, Defendants–Appellants.

No. 89–1571.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1990.

---

322

Allen Landerman, Landerman, Dunlap & Jacobs, Dallas, Tex., for Lemon.

R.H. Weber, Boston, Mass., pro se.

Ray Kramer, Dallas, Tex., pro se.

Steve King, Dallas, Tex., pro se.

L.M. Smith, Garland, Tex., pro se.

Before JONES, DUHÉ and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendants–Appellants R.H. Weber, Raymond Kramer, and Stanley Lemon (appellants) appeal final judgment in favor of Plaintiffs–Appellees Stephen King[1] and L.M. Smith (appellees) in their suit against the appellants and others for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10 b–5 promulgated thereunder, 17 C.F.R.

§ 240.10b–5; and Section 12(2) of the Securities Act of 1933; and for common law fraud, breach of fiduciary duty, and breach of contract. After an interlocutory default judgment was entered on January 12, 1989, against all the defendants but Weber, Kramer and Lemon, the case was tried to a jury which found for King and Smith. Final judgment in their favor was signed on February 17, 1989, and entered on February 22, 1989. Defendants Weber, Kramer and Lemon filed notices of appeal.

We find that Kramer and Lemon did not file their notices timely, so this court lacks jurisdiction and must therefore dismiss their appeals. We affirm the district court's decision as to Weber's liability but reverse its judgment for damages because the court awarded both punitive damages and damages for the Rule 10b–5 violation, a combination not sanctioned under the facts of this case and applicable law.

I

TIMELINESS OF KRAMER'S AND LEMON'S APPEALS

A. Facts

Final judgment in this securities fraud action was filed on February 17, 1989, and entered on February 22, 1989. On March 8, 1989, defendants Weber, Kramer, and Lemon, who had earlier filed a motion for a directed verdict,[2] filed a motion for a judgment notwithstanding the verdict and, alternatively, for a new trial. The motion indicates that it was served on March 7, 1989, which is within ten days of entry of judgment, when intermediate Saturdays and Sundays are excluded. See Fed.R. Civ.P. 6(a). The motion was, therefore, timely made pursuant to Rules 50(b) and 59(b) of the Federal Rules of Civil Procedure. The motion was denied on March 15, 1989. Consequently, April 14, 1989, was

---

1. On January 6, 1989, the district court granted plaintiff Steve King's motion to have Mel Cyrak, the real party in interest and the bankruptcy trustee, substituted as plaintiff. See Fed.R. Civ.P. 17. For convenience, we will refer to King as the plaintiff throughout this opinion.

2. Although the record is not altogether clear on this point, the motion was apparently denied. At the charge conference, the district court did, however, tell counsel for the defendants that "I'll look at that [motion for directed verdict] later. I'm not going to grant it."

the final day for filing a timely notice of appeal. *See* Fed.R.App.P. 4(a)(4).

On April 14, 1989, Kramer filed a notice of appeal (No. 89–1354 in this court). On June 12, 1989, the Clerk of Court dismissed Kramer's appeal, pursuant to Local Rule 42.3, for want of prosecution. On May 15, 1989, Weber filed a motion for an extension of time within which to appeal. He filed his motion during the time which Rule 4(a)(5) of the Federal Rules of Appellate Procedure prescribes for making such a motion. The district court granted Weber's motion in an order filed on June 12, 1989, and entered on June 13, 1989, giving Weber ten days following that date to file a notice of appeal. *See* Fed.R.App.P. 4(a)(5). On June 22, 1989, Weber complied by filing a notice of appeal (No. 89–1571 in this court). On June 29, 1989, Kramer and Lemon filed notices of appeal.

B. Discussion

Kramer and Lemon filed their notices of appeals more than 30 days after the date of entry of judgment.[3] They argue that their appeals are nevertheless timely pursuant to Federal Rule of Appellate Procedure 4(a)(3) because they filed notice within 14 days after the filing of Weber's notice of appeal. Rule 4(a)(3) provides:

> If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

Kramer and Lemon argue that the "first notice of appeal" filed was Weber's on June 22, 1989, and not Kramer's on April 14, 1989.

■ This court strictly applies the language of Rule 4(a)(3). In *Welch v. Elevating Boats, Inc.*, 698 F.2d 230 (5th Cir.1983), we held a cross-appeal untimely because it was filed 16 days instead of 14 days after

the appellant had filed its notice of appeal (and more than 30 days after final judgment). Because Rule 4(a)(3) requires a party to file a notice of appeal "within 14 days after *the date on which the first notice of appeal was filed,*" (emphasis added) and not after service of notice upon that party, we rejected the cross-appellant's argument that Fed.R.App.P. 26(c) granted him three extra days in which to file his appeal.[4] *Id.*

Other circuits too have strictly applied the language of Rule 4(a)(3). In a case in which three notices of appeal were filed, the third circuit rejected as untimely a cross-appeal filed 35 days after the original order and 18 days after the first notice of appeal was filed. *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 122 (3rd Cir.1986). In *IUE* one party timely filed its appeal, and two cross-appeals followed. *Id.* One cross-appellant timely filed notice 13 days after the first notice was filed. The court dismissed the other cross-appellant's appeal because that cross-appellant had filed notice after expiration of both the 30–day period following final judgment for filing notice of appeal and the 14–day period for filing cross-appeals. *Id.* at 122.

Likewise, in a case in which both of those periods had expired by the time one cross-appellant filed notice of appeal, the tenth circuit rejected its notice as untimely. *Savage v. Cache Valley Dairy Ass'n*, 737 F.2d 887 (10th Cir.1984). The other cross-appellant had filed notice after the fourteen-day period for filing cross-appeals had expired but before the thirty-day period after final judgment had expired. *Id.* at 888. Its notice of appeal was, therefore, timely. *Id.*

■ Strictly applying the language of Rule 4(a)(3) in the instant case, we find that "the first notice of appeal" was filed on April 14, 1989, the last day of the thirty-day period after entry of judgment. Kramer filed that first notice, but his appeal was

---

3. Fed.R.App.P. 4(a)(1) provides in pertinent part: "notice of appeal ... shall be filed with the clerk of the district court within thirty days after the date of entry of the judgment or order appealed from."

4. Rule 26(c) gives a party three extra days to perform an act when the act must occur "within a prescribed period after *service of a paper upon that party* and the paper is served by mail." (emphasis added).

later dismissed for want of prosecution. If Lemon wished to file a notice of appeal, he had fourteen days from the date of Kramer's filing in which to do so. *See* Fed.R. App.P. 4(a)(3). Despite having an extra fourteen days during which to consider an appeal, Lemon chose not to appeal. Consequently, we must dismiss his appeal for failure to file his notice timely.

▬▬▬ We also must reject Kramer and Lemon's argument that the district court's grant of Weber's motion to extend time in which to file notice of appeal inures to their benefit. The district court determined only that Weber had shown "good cause" to justify the court's extending him the time to file.[5] Weber's motion and the order granting the extension refer only to his reasons for being late. Furthermore, neither Kramer nor Lemon ever addressed a motion to the *district court* claiming that excusable neglect or good cause justified their receiving an extension of time in which to file notice of appeal; and this court cannot extend the time in which to file a notice of appeal. Fed.R.App.P. 26(b); *see also Savage*, 737 F.2d at 889; *Wyzik v. Employee Benefit Plan*, 663 F.2d 348 (1st Cir.1981).

## II

### WEBER'S APPEAL

A. Sufficiency of the Evidence

In response to special interrogatories,[6] the jury awarded King and Smith respectively $371,895 and $344,695 for their 10b–5 claims and the same amounts for their 12(2) claims. It awarded King and Smith respectively $328,142 and $304,142 for their contract claims. For their common law fraud claims against Weber, the jury

awarded King $144,857 and Smith $135,-257.[7] For their breach of fiduciary duty claims against Weber, the jury again awarded King $144,857 and Smith $135,-257.[8] Against Weber the jury also assessed punitive damages of $150,000 with respect to both King and Smith.[9] The district court awarded King actual damages of $371,895 from all the defendants, jointly and severally, and punitive damages from Weber of $150,000. It awarded Smith actual damages of $344,695 from all the defendants, jointly and severally, and punitive damages of $150,000.

▬▬▬ Weber argues that because he did not participate as a seller in every security purchased by the plaintiffs, no evidence or, alternatively, insufficient evidence supports these damages. We agree that for purposes of Section 12(2) the defendants may not have been sellers of every security. The argument is unavailing, however, because the Section 12(2) definition of seller does not apply to either Section 10(b) or Rule 10b–5. Furthermore, the jury found that the same amount as compensated a Section 12(2) violation also compensated the 10b–5 violation.

▬▬▬ The district court instructed the jury that a defendant is a section 12(2) seller

> if the injury to the plaintiffs flowed directly and proximately from his actions or if he was a motivating force behind the sale. A "seller" is also one whose participation in the sale of securities is a significant or substantial factor in causing the transaction to take place.

The district court clearly erred in this definition. This court has held that to be defined a "seller," a person must fall within

---

5. Fed.R.App.P. 4(a)(5) provides in pertinent part:

 The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).

6. Fed.R.Civ.P. 49(a).

7. For their fraud claims the jury awarded King $144,857 from Lemon and $31,269 from Kram-

er and awarded Smith $135,257 from Lemon and $26,469 from Kramer.

8. From Lemon and Kramer the jury likewise awarded the plaintiffs the same amounts for their breach of fiduciary duty claims as it had awarded for their fraud claims.

9. As punitive damages the jury also awarded King and Smith $250,000 each from Lemon and $75,000 each from Kramer.

the definition which the Supreme Court has articulated in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1113–1114 (5th Cir.1988), *vacated,* —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *on remand,* 884 F.2d 196 (5th Cir. 1989).[10]

■ Section 10(b), on the other hand, does not mandate the inquiry that the definition of seller in section 12(2) requires.[11] Section 10(b) generally forbids the use of any manipulative or deceptive device "in connection with the purchase or sale of any security." *See* 15 U.S.C. § 78j(b). Courts broadly interpret the "in connection with" requirement. *Superintendent of Ins. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128, 134 (1971); *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 785 F.2d 1274, 1277 (5th Cir.1986). To make out a claim under section 10(b) of the Securities Exchange Act of 1934, "the plaintiff must establish (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury." *Abell,* 858 F.2d at 1115 (quoting *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir. Unit A Mar.1981), *rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)).

■ The plaintiffs specifically alleged that Weber, inter alia, misrepresented himself as experienced, capable, knowledgeable and successful in managing liquid disposal partnerships and as having had operating experience in the oil and gas business. They also claimed that he had omitted disclosing his involvement in a partnership offering as a result of which Lemon had been asked to resign from a national accounting firm for breach of the ethics of the profession and of the firm. Furthermore, they alleged that Weber did not disclose that R.H. Weber Exploration, Inc., had been involved in a securities offering that had to be withdrawn because of failure to disclose material information. The jury concluded not only that Weber had knowingly made these misrepresentations and omissions, but that these misrepresentations and omissions had caused the plaintiffs' damages.

■ When we view the evidence in the light most favorable to the appellees, as we must with a jury verdict, *Smoky Greenhaw Cotton Co.,* 785 F.2d at 1277, we find that the appellees established the necessary elements needed to prove a Rule 10b–5 violation. The appellants concede "in all candor" that "numerous omissions and misrepresentations were shown at trial." We find that the record demonstrates that sufficient evidence existed for the jury to find that Weber knowingly made material misrepresentations and omissions in or-

---

**10.** "The definition of 'seller,' as the *Pinter* court has articulated it, requires … two inquiries: '(1) Who passed title to the plaintiff or solicited the transaction in which title passed; and (2) from whom did the plaintiff buy the security?'" *Abell,* 858 F.2d at 1114.

**11.** Section 10(b) reads:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— …
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 reads:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. 240.10b–5.

der to defraud each plaintiff and that, with Lemon and Kramer, he jointly defrauded the plaintiffs. The court, therefore, properly entered judgment against Weber.[12]

### B. Jury Instructions

 Weber also contends that in requiring the jury to state only one sum as compensation for the plaintiffs' Rule 10b–5 violations, the court improperly submitted the damage question to the jury. Weber argues that instead the district court should have required the jury to state the amount of damages to be awarded against each defendant. Weber preserved his right to appellate review, Fed.R.Civ.P. 51, by a timely objection in which he asked that damages be assessed against each defendant.

In fashioning jury instructions, a trial court is accorded substantial latitude and "if, considering the totality of a charge, the instructions are 'comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate.'" *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir.1989) (quoting *Scheib v. Williams–McWilliams Co., Inc.*, 628 F.2d 509 (5th Cir.1980)). The court fully informed the jury on the controlling principles of law governing Rule 10b–5. The jury's answers to the questions put to it suggest that it was not confused. The evidence also enabled the jury to conclude that the appellants jointly defrauded the plaintiffs. Consequently, we find that the court did not err in refusing to give the instruction.

### C. Awards

 The district court has, however, erred in awarding the appellees both actual

damages for their Rule 10b–5 violation and punitive damages. Punitive damages are not recoverable in a 10b–5 action. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 559 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). They are, however, recoverable in a pendent state claim. *Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir. Unit A 1981); *Coffee v. Permian Corporation*, 474 F.2d 1040, 1044 (5th Cir.), *cert. denied*, 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973).

 When a federal securities claim overlaps with a pendent state claim, the plaintiff is entitled to the maximum amount recoverable under any claim. *Grogan v. Garner*, 806 F.2d 829, 839 (8th Cir.1986). The plaintiffs are entitled to the "greatest amount recoverable under any single theory pled, with actual damages plus prejudgment interest [on the federal claim] representing one single amount and actual damages plus punitive damages [on the pendent claim] representing the other single amount." *Id.* (citing *Randall v. Loftsgaarden*, 478 U.S. 647, 667, 106 S.Ct. 3143, 3156, 92 L.Ed.2d 525, 544 (1986) (Blackmun, J., concurring) (parties who prevailed on Rule 10b–5 claim and on § 12(2) claim entitled to select the damage amount more favorable to them); *Aboussie v. Aboussie*, 441 F.2d 150, 157 (5th Cir.1971), (jury award under common law count upheld; new trial ordered to determine damages under 10b–5, with caveat that if federal damages are less than common law damages, the federal damages are extinguished), *reh'g granted*, 446 F.2d 56 (5th Cir.1971)).

 Like the Eighth Circuit, we conclude that the plaintiffs may receive one

---

**12.** Weber also contends that the plaintiffs offered no testimony concerning the amount of damages sought as adequate compensation for their losses. The amounts which the plaintiffs paid to purchase securities were stipulated. The district court instructed the jury that in calculating a sum that would reasonably compensate the plaintiffs, it "should take into account the amount of money paid by the Plaintiffs for the program in question and interest from the date of payment, less the amounts, if any, the plaintiffs received on account of such securities."

Defendants did not timely object to the court's instruction on interest in order to preserve it for appeal. We note, however, that the standard for awarding prejudgment interest in a 10b–5 case is one of fairness and its application rests within the district court's sound discretion. *Huddleston v. Herman & MacLean*, 640 F.2d 534, 560 & n. 48 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), *on remand*, 705 F.2d 775 (5th Cir.1983).

award of damages under either the Rule 10b–5 claim or the pendent state claims, whichever is the greater, and that, upon satisfaction of the judgment, the lesser damages are deemed extinguished. *See Grogan*, 806 F.2d at 839. King may, therefore, receive $328,142 total actual damages from all the defendants and punitive damages of $150,000 from Weber. Smith may receive $304,147 total actual damages from all the defendants and punitive damages of $150,000 from Weber.

D. Attorney's Fees

■■■ Finally, Weber argues that plaintiffs cannot recover attorney's fees without recovering damages. As the plaintiffs have recovered damages, this argument is moot.[13]

### III

### CONCLUSION

Kramer and Lemon did not file timely notices of appeal. Their appeals are, therefore, DISMISSED because this court lacks jurisdiction to hear them. The judgment of the district court as to Weber's liability is AFFIRMED. Because the district court awarded damages under two separate theories, its judgment as to damages is REVERSED and RENDERED to accord with the amounts set forth in this opinion.

---

**13.** We note that in a 10b–5 action, "absent special circumstances," attorneys' fees are not recoverable, *Huddleston*, 640 F.2d at 559. As we have discussed above, the jury, however, also found, the defendants liable for common law fraud, breach of contract, and breach of fiduciary duty. If the claim is for an oral or written contract, recovery of attorney's fees is possible under Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986). Other than arguing that plaintiffs cannot recover attorney's fees in the absence of damages, the appellants do not contest the award of fees.