The TAYLOR GROUP, INC., Plaintiff,

v.

Roger W. JOHNSON, et al., Defendants.

CA No. 94–D–1254–S.

United States District Court,
M.D. Alabama,
Southern Division.

Nov. 27, 1995.

James H. McLemore, Montgomery, AL and Karl Dix, Jr., Atlanta, GA, for plaintiff.

Kenneth E. Vines, Asst. U.S. Attorney, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff The Taylor Group, Inc.'s application filed November 14, 1994, for fees, expenses and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The United States responded in opposition on December 12, 1994. For the reasons stated herein, the court will reserve ruling on the plaintiff's application for attorney fees.

## BACKGROUND

The plaintiff filed the above-styled action on September 29, 1994, against agents of the Environmental Protection Agency ("EPA") and the General Services Administration ("GSA"). The complaint sought declaratory and equitable relief under the Competition in Contracting Act, 31 U.S.C. §§ 3551–3556. As the incumbent contractor, the plaintiff challenged the GSA's proposed award of a three-month emergency procurement contract for security guard services at the EPA headquarters at the Waterside Mall in Washington, D.C. The plaintiff had been providing these services for the EPA under a contract that included a base period of three months plus four concurrent one-year options. When this dispute arose, the plaintiff was performing under the first option, which ran from October 1, 1993, to September 30, 1994.

In sum, the complaint alleged that the EPA sought to terminate the plaintiff's contract due to a dispute between it and the EPA regarding an error in the solicitation regarding wage rate adjustments for the one-year contract term commencing October 1, 1994. According to the plaintiff, the EPA stated that it would correct the solicitation error during contract performance. The plaintiff asserts that based upon this representation, it did not file a protest and bid as instructed by the EPA.

The plaintiff further asserted that the EPA did not honor its representation and that after being forced to pay the disputed wage increase, the EPA notified the plaintiff that its option would not be exercised despite the EPA's previous preliminary notice of intent to do so. The plaintiff alleged that even though its services were satisfactory, the EPA engaged the GSA to issue a three-month emergency services procurement contract to begin October 1, 1994, so that the EPA could re-write the solicitation and oust the plaintiff from the project.

By letter dated August 30, 1994,[1] the plaintiff filed a protest with the General Accounting Office ("GAO") challenging the necessity of an "emergency" contract and the award of the contract to Mid–Atlantic Security Ser-

---

1. The plaintiff also filed similar protests on September 16, 1994, September 20, 1994, and September 22, 1994.

vices, Inc.[2]   Under 31 U.S.C. § 3553(c)(1), the plaintiff's timely-filed protest imposed an automatic stay against the award and performance of the contract pending the GAO's resolution of the plaintiff's protests.   In its protests, the plaintiff requested, in part, that the Comptroller General recommend to the GSA to cancel the award and performance of the contract to Mid–Atlantic Security Services, Inc., and to exercise the plaintiff's option in its current contract.   The plaintiff alleged that the GSA never responded to its protests and that, subsequently, the GSA informed the plaintiff that it was overriding the stay pursuant to the statutory provision that allows such an override if the agency determines that urgent and compelling circumstances exist.   *See* 31 U.S.C. § 3553(c)(2).

The plaintiff then commenced this action. The next day, on September 30, 1994, the plaintiff filed a motion for a temporary restraining order and preliminary injunction, requesting the court to compel the GSA and the EPA to stay the award of the contract pending resolution of the plaintiff's protests. The plaintiff argued that "urgent and compelling circumstances" did not necessitate the emergency procurement since it was ready, willing and able to perform the services.

By order entered September 30, 1994, the court issued a temporary restraining order and enjoined for twenty days the performance of the contract by Mid–Atlantic Security Services, Inc.   Thereafter, on October 12, 1994, the parties entered into a settlement agreement, which is part of the record. Pursuant to the terms of the settlement agreement, the GSA and the EPA terminated the contract awarded to Mid–Atlantic Security Services, Inc., canceled the solicitation and extended the plaintiff's contract for an additional six months from October 1, 1994, through March 31, 1995.   Having received the relief requested and in accordance with the terms of the settlement agreement, the plaintiff filed a Notice of Dismissal of the above-styled cause.   The court dismissed the lawsuit without prejudice on October 13,

1994.   The plaintiff's motion for attorneys fees followed.

## DISCUSSION

■   The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, governs the award of fees in this case and provides that in a lawsuit against the United States, the "prevailing party in any civil action" may seek payment for costs, reasonable fees and expenses of attorneys incurred in the litigation.   28 U.S.C. § 2412(a)(1) & (b).   The award of fees is mandatory unless the court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust."   28 U.S.C. § 2412(d)(1)(B).   The court's award, denial or reduction of fees will not be overturned absent an abuse of discretion.   *Pierce v. Underwood*, 487 U.S. 552, 559, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988).   The United States argues that an award is inappropriate because the position of the United States was substantially justified and that, in the alternative, special circumstances existed for denying an award under the EAJA.

■   Before addressing the United States' contentions, the court must determine whether the plaintiff is a "prevailing party" within the meaning of the EAJA.   A party can qualify as a "prevailing party," not only by obtaining a favorable judgment after a trial on the merits, but also through a successful termination of the litigation by a consent decree or out-of-court settlement.   *Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985) (citation omitted); 28 U.S.C. § 2412(d)(2)(H).   All that is required is that the party obtain some relief on the merits of his or her claims.   In other words, the plaintiff's lawsuit merely must act as a " 'catalyst' " in causing the United States to satisfy some of the benefit sought by the plaintiff in bringing the lawsuit.   *See Citizens Coalition for Block Grant Compliance v. City of Euclid*, 537 F.Supp. 422, 425 (N.D.Ohio 1982),

---

**2.**   The GAO is a legislative agency, the head of which is the Comptroller General.   The Comptroller General's statutory responsibilities include resolving bid protest disputes involving agency

procurement decisions and rendering written determinations as to "whether the solicitation, proposed award, or award complies with statute and regulation."   31 U.S.C. § 3554(b)(1).

*aff'd* 717 F.2d 964 (6th Cir.1983) (citation omitted).

■ In this case, the court finds that the plaintiff did attain some relief on the merits of its claims. The plaintiff's immediate goal in filing the temporary restraining order was to prohibit the GSA from lifting the automatic stay while the plaintiff's protests were pending before the GAO. Both the court's temporary restraining order and the terms of the settlement agreement provided this relief to the plaintiff. Moreover, the settlement agreement—which resulted in the termination of the contract with Mid–Atlantic Security Services, Inc., and the extension of the plaintiff's contract—fulfills, in large part, the plaintiff's ultimate goals. Accordingly, the court finds that the plaintiff has achieved some of the benefits sought in bringing this lawsuit and, thus, is a "prevailing party."

## I. Substantial Justification

■ Once a party has prevailed within the meaning of the EAJA, the burden shifts to the United States to show that its position is substantially justified. *Swedish Hosp. Corp. v. Shalala*, 845 F.Supp. 894 (D.D.C.1993). As explained by this circuit, "[t]he standard for substantial justification is one of reasonableness. The government must show that its case had a reasonable basis both in law and fact. The test is 'more than mere reasonableness.'" *Stratton v. Bowen*, 827 F.2d 1447, 1449–50 (11th Cir.1987) (citations and footnote omitted), quoted in *Hudson v. Secretary of Health and Human Services*, 839 F.2d 1453, 1456 (11th Cir.1988), *aff'd sub nom. Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).

■ The legal issue is whether the United States was substantially justified in lifting the stay and in determining that an emergency procurement contract was urgent and compelling. The United States asserts that under 31 U.S.C. § 3553(b), the GSA made the appropriate findings that "urgent and compelling circumstances" dictated that the contract award to Mid–Atlantic Security Ser-

vices, Inc., continue in the face of the plaintiff's protests pending before the GAO.[3] The GSA issued its written "Findings" on September 27, 1994, and therein stated that the "[f]ailure to have a security contract in place by October 1, 1994 would cause an interruption of Government operations at these locations, [and] could also result in serious injury, financial or other, not only to the Government, but to the occupants as well." Pl.'s Verified Compl. (Ex. 14 attached thereto).

In arguing that the award of the contract to Mid–Atlantic Security Services, Inc., and the GSA's determination to lift the stay was not substantially justified, the plaintiff relies, in part, on *Dairy Maid Dairy, Inc. v. United States*, 837 F.Supp. 1370 (E.D.Va.1993), wherein the court analyzed the United States Army's ("Army") decision to lift a stay under the Competition in Contracting Act's "urgent and compelling circumstances" provision. There, the plaintiff provided services for the operation of an Army milk plant in Korea. The plaintiff filed numerous protests with the GAO, challenging purported defects in the solicitation for a new contract. The Army overrode the automatic stay, and the plaintiff filed suit asserting that the Army failed to make the requisite findings. Because the findings ignored the willingness of the plaintiff, as the incumbent contractor, to continue providing services during the pendency of the protest, the court found that no rational basis existed to override the stay.

The court finds that here also the GSA's written findings are insufficient to sustain the United States' burden of substantial justification. In its determination, the GSA merely provided a conclusory assertion and failed to provide any reasons why awarding the contract to Mid–Atlantic Security Services, Inc., presented urgent and compelling circumstances. *See Universal Shipping Co., Inc. v. United States*, 652 F.Supp. 668, 675–76 (D.D.C.1987) (finding that an override of a stay is not justified where the agency fails to explain why a specific contractor is required

---

**3.** Section 3553(b)(2) provides that "the head of the procuring activity responsible for award of a contract may authorize the award of the contract ... upon a written finding that urgent and com-

pelling circumstances which significantly affect the interests of the United States will not permit waiting for [the GAO's decision on the merits of the protest]."

to perform the job). The United States also has not explained why the EPA could not have continued to employ the plaintiff's services pending the decision of the GAO. The plaintiff represented to the EPA and the GSA, as well as in its verified complaint, that it was ready, willing and able to continue its services until the GAO issued a determination on its protests. At least one other court has found that urgent and compelling circumstances do not exist where the incumbent contractor has sufficient contract options for extension that may be exercised to permit resolution of the protest. *DTH Management Group v. Kelso*, 844 F.Supp. 251, 256 (E.D.N.C.1993). Moreover, there is no indication in the record that the plaintiff's services were not satisfactory. Accordingly, the court finds that the evidence is insufficient to sustain the United States' burden of showing that the EPA's position was substantially justified.

## II. Special Circumstances

■ Next, the United States argues that "special circumstances" warrant a denial of fees. The "special circumstances" exception under the EAJA is equitable in nature and functions as a " 'safety valve [to] help[ ] insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.' " *National Treasury Employees Union v. Internal Revenue Service*, 735 F.2d 1277, 1278 (11th Cir.1984).

The United States asserts that an award of fees is unjust because the settlement agreement is silent as to fees and contains language effecting a general release of all claims against the United States. The United States points to the following language: "This Settlement Agreement contains the entire agreement and understanding between [the plaintiff] and Defendant relating to the subject matter contained herein, and it may not be altered, amended, or modified in any respect or particular whatsoever except by writing duly...." Pl.'s Notice of Dismissal (Ex. A attached hereto).

Some courts have found that a party's failure to address the fees issue in an otherwise comprehensive settlement agreement implies an intent to waive a subsequent fee claim. *See Brown v. General Motors Corp.*, 722 F.2d 1009 (2d Cir.1983); *Young v. Powell*, 729 F.2d 563 (8th Cir.1984). The Eleventh Circuit, however, has not taken such a restrictive view and has looked to the intent of the parties in the absence of a provision regarding attorney fees or any discussion on this point during negotiations. *National Treasury Employees Union*, 735 F.2d at 1279.

In *National Treasury Employees Union*, wherein the plaintiff sought fees under the EAJA, the Eleventh Circuit held that absent a factual basis to conclude that the prevailing party waived attorney fees or that the United States assumed attorney fees were not wanted, the court should hold an evidentiary hearing if the parties cannot stipulate to the facts. *Id.* at 1279. The court suggested that a denial of fees may be warranted where the prevailing party "remained silent on attorney's fees during settlement discussions for fear their injection would upset the settlement." *Id.* On the other hand, the court stated that a waiver should not be found if counsel for the prevailing party "merely overlooked" the statutory right to fees or if the United States deliberately did not mention costs in order to take advantage of its oversight. *Id.*

Here, the record does not disclose the parties' intention as to fees. In fact, there is no evidence in this regard. The only indication of intent is the United States' unsworn assertion that the settlement agreement "constitute[d] the entire agreement between the parties" because "at no time prior to or during settlement discussion did counsel [for plaintiff] indicate that attorneys' fees, costs and expenses were excluded from the Settlement Agreement." U.S.Mem. in Opp. to Pl.'s Appl. for Fees, Expenses and Costs, filed Dec. 12, 1994, at 4–5. Moreover, the clause that the United States claims absolves it from paying fees is less than clear as to the parties' intent, because it only refers to the terms specifically enumerated in the settlement agreement. Thus, as in *National*

*Treasury Employees Union,* the court finds that "until the facts are fully developed either by an evidentiary hearing or a stipulation by the parties, neither of the parties is in a position to argue, nor is the court in a position to decide, the legal consequences which flow from the parties' conduct in this case." *Id.* at 1279. The court directs the parties to enter into a joint stipulation of the facts regarding the intent and discussions, if any, of attorney fees during settlement negotiations. If the matter cannot be resolved by stipulation, then the court will schedule a hearing. The court emphasizes that the plaintiff could have avoided this result by including an express fee reservation provision in the settlement agreement. *See Ross v. Saltmarsh,* 521 F.Supp. 753 (S.D.N.Y. 1981), *aff'd mem.,* 688 F.2d 816 (2d Cir.1982).

### ORDER

Accordingly, it is CONSIDERED and ORDERED that the parties file a joint stipulation of facts on or before December 11, 1995, and that the court will RESERVE RULING on the plaintiff's application for fees.