**UNIVERSAL SHIPPING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 87–156.

United States District Court, District of Columbia.

Feb. 3, 1987.

Joseph R. Lowry and Daniel J. Kelly, Washington, D.C., for plaintiff.

Wilma A. Lewis, Asst. U.S. Atty., and, on brief, Joseph E. DiGenova, U.S. Atty., Royce C. Lamberth, Asst. U.S. Atty., and Stephen J. Narkin, Washington, D.C., Atty. Advisor, Agency for Intern. Development.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

In this case plaintiff challenges the Agency for International Development's refusal to suspend a contract that is the subject of an unresolved protest before the Comptroller General. The facts of this case are undisputed, and, as they provide background necessary for a full understanding of the novel issues of the case, merit full recital.

The Administrator of the Agency for International Development ("AID") is charged with implementing and administering the nation's program of famine relief and assistance. 7 U.S.C. § 1721 et seq. (establishing program); Exec. Order No. 12,220, 3 C.F.R. 263–66 (Sept. 10, 1980) (delegation to AID). Pursuant to that responsibility, AID solicited bids for a contract to provide freight forwarding, booking, and chartering services for transportation of food relief shipments to countries in need. On June 5, 1985, AID awarded that contract to plaintiff (the "Universal Contract").

The Universal Contract was for a one-year term, but it gave the agency head the option of extending the contract for two additional one-year terms. After the initial one-year term ended, AID extended the contract twice, first for six months and then for an additional three-and-one-half weeks, ending January 25, 1987. During the six-month extension period, AID requested bids on a new contract for the services provided by Universal under its contract. On December 11, 1986, AID awarded the new contract to Daniel F. Young, Inc. (the "Young Contract"), a bidder that had lodged an unsuccessful protest against the original award to plaintiff. On Monday, December 22, 1986, plaintiff filed a protest of this award with the Comptroller General (Protest No. B–223905.2).

Under the Competition in Contracting Act of 1984, a protested contract is ordinarily stayed pending resolution of the dispute. 31 U.S.C. § 3553(d)(1). The sole exception to this suspension occurs if "[t]he head of the procuring activity responsible for the award of a contract ... [makes] (A) ... a written finding (i) that performance of the contract is in the best interests of the United States; or (ii) that urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General ..." *Id.* at § 3553(d)(2)(A).

On January 16, 1987, Terrence J. McMahon, Director of the Office of Procurement of the Agency for International Development, certified that suspension of the Young Contract would not be in the best interests of the United States and that urgent and compelling circumstances significantly affecting United States interests mandate performance of the contract despite Universal's pending protest. On January 22, Universal filed suit in this Court, seeking to enjoin performance of the new contract and arguing that AID's "certification" did not meet the standards of § 3553 and should be set aside as contrary to law.

In addition to countering this argument on the merits, defendant maintains that plaintiff does not have standing to bring this suit. Defendant also argues that, even if plaintiff has standing, AID's decision not to suspend the Young Contract is not reviewable by this Court. Finally, defendant argues that the stay provisions of the Competition in Contracting Act ("CICA") are unconstitutional.[1]

On January 29, 1987, the Court held a hearing on the merits of this action and on plaintiff's motions for temporary and preliminary injunctive relief as well. The Court has carefully considered the arguments advanced in open court, the motion and opposition thereto, and all supporting memoranda and affidavits. In consequence, the Court has concluded that plaintiff has standing to bring this suit, that the decision not to suspend the Young Contract is reviewable, that CICA's stay provisions are constitutional, and that plaintiff is entitled to relief.[2]

### PLAINTIFF HAS STANDING TO BRING THIS SUIT.

Plaintiff relies on two government contract cases for the proposition that it here has standing to sue. Those cases establish that an unsuccessful bidder has standing to challenge a contract award (*Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970)) and that a potential contractor who was denied a chance to compete for a contract may challenge the process in which the contract was awarded (*Aero Corp. v. Department of the Navy*, 540 F.Supp. 180 (D.D.C.1982)). Neither case directly extends standing to an unsuccessful bidder who challenges a failure to suspend a contract while an award protest is pending. That plaintiff's argument is not altogether convincing does not, however, decide the issue.

■ Although perimeter issues involving standing may increasingly be murky, the central elements of the doctrine are clear. Standing encompasses both constitutional and statutory concerns. *See Control Data Corp. v. Baldrige*, 655 F.2d 283, 288 (D.C. Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). First, in accordance with Article III's case or controversy requirement, a court must focus on " 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' " *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (*quoting Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)) (emphasis in original); *see also, Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322, 1330 (D.C.Cir.1986). In other and more oft-invoked words, plaintiff must demonstrate "injury-in-fact."

In addition, a plaintiff must show that the interest he or she asserts is "at least ... 'arguably within the zone of interests to be protected or regulated' by the statutory framework within which his claim arises." *Simon*, 426 U.S. at 39 n. 19, 96 S.Ct. at 1925 n. 19 (*quoting Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829,

---

1. Independent of arguments put forth by defendant, the Court expressed concern at oral argument that jurisdiction over this suit lies with the United States Court of Claims, not with this Court. Upon reflection, the Court is satisfied that it has jurisdiction over this action. Plaintiff's suit goes to the propriety of an administrative decision; it is not an action on the contract, which would properly be brought before the Court of Claims. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 76 (D.C.Cir.

1985). As this is a post-award suit in equity in which money damages are not requested, jurisdiction is proper in this Court. *See, e.g., B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727 (2d Cir.1983).

2. The Court will not specifically address plaintiff's request for temporary injunctive relief, as this Opinion, and the accompanying Order, provide plaintiff with permanent relief.

25 L.Ed.2d 184 (1969). But, as the Supreme Court has recently made clear, arguable inclusion within a broad "zone of interests" is not enough; a court must also inquire as to whether congressional intent, divined from all possible sources, supports the *particular* plaintiff's claimed ability to challenge the *particular* action at issue. *Clarke v. Securities Industry Association,* — U.S. —, —, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).

██ Plaintiff in this case passes both elements of the standing inquiry. First, plaintiff has asserted, and demonstrated, sufficient injury-in-fact. The evidence before the Court, as well as common sense, suggests that an interim contractor would have been appointed, if available, had the Young Contract been suspended. *See* Plaintiff's Exhibit D, *July 3, 1985 Finding on Necessity of Continuation of Performance of Contract,* at 2. By failing to suspend the Young Contract, defendant denied plaintiff at least the chance to compete for the interim contractor position. Moreover, since AID had once extended plaintiff's contract because Young could not begin performance, *see Plaintiff's Statement of Points and Authorities* at 5, it is plausible to conclude that a stay of the Young Contract would automatically have led to an extension of plaintiff's contract. Regardless of which is the more likely scenario, AID's failure to suspend the contract obviously caused plaintiff a specific injury "that fairly can be traced to the challenged action of the defendant" and thus passes the injury-in-fact test. *Simon,* 426 U.S. at 41, 96 S.Ct. at 1925; *see also, Northwest Airlines v. Federal Aviation Administration,* 795 F.2d 195, 201 (D.C.Cir.1986); *Block v. Meese,* 793 F.2d 1303, 1309 (D.C. Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986).

There is equally little doubt that plaintiff's interest in this action falls within the zone of interest that Congress intended to protect. The legislative history quite clearly establishes that the stay provisions of the Competition in Contracting Act were designed to prevent protested procurement contracts from becoming *faits accomplis;* Congress intended to prevent such protests, in all but extraordinary circumstances, from becoming moot by virtue of contract performance. *See Ameron Inc. v. United States Army Corps of Engineers,* 787 F.2d 875, 879 (3d Cir.1986) (lengthy discussion of legislative history). A better mesh between suit and legislative interests is hard to imagine.

Accordingly, the Court finds that plaintiff has standing to bring this suit against defendant. It must now turn to whether the Court is empowered to review defendant's action.

## THIS COURT HAS THE POWER TO REVIEW THE AGENCY DECISION NOT TO STAY THE YOUNG CONTRACT.

The Competition in Contracting Act of 1984 provides, *inter alia,* that, once a federal agency has received notice that a contract award has been protested, it must immediately direct the contractor to cease performance and to suspend related activities. 31 U.S.C. § 3553(d)(1) (Supp.1985). Performance may continue *only* if the head of procuring activity for the agency issues "a written finding that performance is in the best interests of the United States; or that urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest." *Id.* at § 3553(d)(2)(A).

Defendant argues that these written findings are committed to agency discretion by law and in a manner that provides no standards by which a court can review the exercise of that discretion. Accordingly, defendant suggests that a court may not review the official's determination. These arguments implicate Section 701(a) of the Administrative Procedure Act, which removes two types of administrative agency decisions from judicial review. A court may not review a decision made pursuant to a statute that precludes judicial review. 5 U.S.C. § 701(a)(1). Nor may a

court review an agency action that is "committed to agency discretion by law." *Id.* at § 701(a)(2). The Court cannot agree that either prong of Section 701(a) bars judicial review of AID's decision not to stay the Young Contract.

Section 701(a)(1) "requires construction of the substantive statute involved to determine whether Congress intended to preclude judicial review of certain decisions." *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Section 701(a)(1) does not create a presumption against review. Rather, there must be a showing of "clear and convincing evidence of congressional intent to negate review before access to judicial review may be restricted." *Doe v. Casey,* 796 F.2d 1508, 1515 (D.C.Cir.1986); *see also, Dunlop v. Bachowski,* 421 U.S. 560, 567–68, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975).

The legislative history does not even intimate that Congress wished to preclude judicial review of failures to stay contracts pending resolution of protests upon them. *See* H.R.Rep. No. 1157, 98th Cong., 2d Sess. (1984). Indeed, Congress's clear concern for the most scrupulous fairness in the protest and post-award process implies review and thus ends the matter. If additional support for this conclusion were necessary, one need look no farther than the statute itself. To establish protest procedures and to make a stay of a protested contract automatic in all but extraordinary circumstances is to display a suspicion of agency fairness altogether at odds with foreclosure of judicial review.

■ This is, of course, only half the inquiry, for Section 701(a)(2) requires a very different analysis. This injunction against judicial review applies "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655; *see also, Falkowski v. Equal Employment Opportunity Commission,* 764 F.2d 907 (D.C.Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 3319, 92 L.Ed.2d 727 (1986). Although *Heckler* is often denom-

inated, as it is by defendant, a bar to judicial review of a broad range of agency actions, *Heckler* itself says that Section 701(a)(2) creates a "narrow" exception to the general presumption of judicial review. *Id.; see also, Amalgamated Transit Union International v. Donovan,* 767 F.2d 939, 945 (D.C.Cir.1985). Indeed, even after *Heckler,* which involved an agency decision not to undertake enforcement activity, there remains a "strong presumption that agency action outside of the enforcement arena is reviewable." *Robbins v. Reagan,* 780 F.2d 37, 45 (D.C.Cir.1985).

In sum, only if the statutory scheme, and other relevant materials, provide "absolutely no guidance as to how (administrative) discretion is to be exercised" is review foreclosed. *Heckler,* 470 U.S. at 830, 105 S.Ct. at 1655; *see also Doe v. Casey,* 796 F.2d at 1517. This cannot describe the statutory provisions at issue in this case.

Under the Competition in Contracting Act, the head of agency procurement activity may decide not to stay a protested contract only if he or she first issues a "written finding" that the stay would be contrary to the best interests of the United States or that circumstances are so urgent and compelling that they do not permit delay. 31 U.S.C. § 3553(d)(2)(A). The statute asks not for a mere conclusion but for a *finding.* This need not be a lengthy discourse on every reason behind the decision, but it must be notify the reader of the bases upon which the decision to proceed with the particular contract rests. *See Doe v. Casey,* 796 F.2d at 1518; *Coleman v. Brucker,* 257 F.2d 661, 663 (D.D.C.1958). A court surely can examine the whether or not reasons were proferred, else the statute would be a mere exhortation and not a binding command. *See Doe v. Casey,* 796 F.2d at 1518.

Moreover, those reasons must demonstrate that the administrator's decision was based on the best interests of the United States or depended upon the existence of extraordinary circumstances counseling unusual haste. To be sure, an administrator's decision about the best interests of

the nation is entitled to substantial deference. *Doe v. Casey*, 796 F.2d at 1518. But a court "must satisfy [itself] that the [decision] has *some* relationship to the interests of the United States" or "wholly irrational, vindictive, or even blatantly unconstitutional action" could proceed unchecked. *Id.* at 1518 (statute requires determination that employee's termination advanced the interests of the United States).

■ Accordingly, there can be no doubt that 31 U.S.C. § 3553(d)(2)(A) provides a court with sufficient guidance against which to judge the agency's exercise of discretion. The Court is, without question, empowered to review AID's decision not to stay the Young Contract.

## THE STAY PROVISIONS OF THE COMPETITION IN CONTRACTING ACT ARE CONSTITUTIONAL.

Defendant argues that the stay provisions of CICA are unconstitutional in that they vest executive functions in the Comptroller General, an officer of the legislative branch of government. If this were so, it would undoubtedly violate the constitutionally imposed separation of powers, for the Comptroller General "may not be entrusted with executive powers." *Bowsher v. Synar*, —— U.S. ——, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986). After a careful examination of the law in question, the Court is satisfied that the Comptroller General's powers under CICA do not exceed legislative authority.

*Bowsher* is the Supreme Court's most recent articulation of the nature of the executive power, and it offers guideposts by which the Court can consider the Comptroller General's powers here. Central to *Bowsher's* invalidation of the powers assigned to the Comptroller General by the Gramm-Rudman-Hollings Act was the assignment to the Comptroller General of "ultimate authority to determine the budget cuts to be made." *Id.* 106 S.Ct. at 3192. In the context of that broad grant of discretionary authority, *Bowsher* noted that "[i]nterpreting a law enacted by Congress to implement the legislative mandate

is the very essence of 'execution' of the law." *Id. Bowsher* makes clear that "execution" involves making judgments about application of a statute in a particular instance and making actual interpretations of law in order to implement it. *Id.*

First, CICA does not specify a maximum period for which a contract stay would ordinarily last. Instead, it instructs the Comptroller General to issue his decision on a contract protest within ninety days, unless he states in writing the reasons why a particular protest requires a longer period to resolve. *Id.* at § 3554(a)(1). These powers do not require the Comptroller General to engage in any prohibited "interpretation" of law or "judgment" about a law's application. In contrast to the powers at issue in *Bowsher*, the Comptroller General's function under CICA is not interpretation or execution but *investigation*, quintessentially a power of the legislative branch. *See* J. Nowak, R. Rotunda, J.N. Young, *Constitutional Law* 243–44 (1983).

Defendant in this case focuses on the Comptroller General's ability to determine that a particular protest will require more than ninety days to resolve, thereby extending the period for which a contract may be suspended. Under the terms of the statute, no stay would issue if an executive branch official determined in the first instance that a stay would be contrary to the best interests of the United States. 31 U.S.C. § 3553(d)(2)(A). Nor, if no such finding is initially made, does the statute prohibit that official from subsequently lifting the stay. *Id.* Therefore, it is not axiomatic that the Comptroller General's decision to lengthen the investigation necessarily results in a longer stay of the contract. The "ultimate authority" over the stay never leaves the executive agency; the proper delegation of power enunciated by *Bowsher* remains undisturbed.

■ In short, the Comptroller General's speculative and indirect ability to extend the length of a contract stay in no way affects the executive's power to deny or discontinue that stay or in any way

amounts to "execution" of a law. As such, the Court must reject defendant's argument that the provisions at issue violate the fundamental doctrines of separation of powers. The stay provisions are constitutional.

## AID'S REFUSAL TO STAY THE YOUNG CONTRACT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT.

The Administrative Procedure Act authorizes a court to set aside as unlawful agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Ordinarily, a court must look at whether the decision was based on the legally relevant factors and whether the decision-maker made a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). A more stringent test is usually applied in the government procurement area; there, only decisions that are not "reasonable" or "rational" are deemed to violate the law. *Kentron Hawaii, Limited v. Warner*, 480 F.2d 1166 (D.C.Cir.1973); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir. 1971). This case does not involve a procurement as such but, whether tested under the general or the procurement-specific standard, AID's action is obviously contrary to law.

As detailed above, the Competition in Contracting Act requires the head of procurement activity to issue a written statement stating reasons why a stay of a particular contract would damage United States interests if he or she has so determined. *See* p. 672, *supra;* 31 U.S.C. § 3553(d)(2)(A). Mr. Terrence McMahon, head of procurement for AID, issued a statement that purports to satisfy this requirement. *Plaintiff's Statement of Points and Authorities*, Exhibit B (Letter from T.J. McMahon to General Counsel, General Accounting Office). No matter how often this Court has read McMahon's statement, it still cannot conclude that AID's decision was based on the factors that CICA makes "legally relevant" or was even rational or reasonable.

That letter speaks of the importance of and urgent need for famine relief. The Court has no doubt that famine relief is in the best interests of the United States and that circumstances are sufficiently "urgent and compelling" to merit an uninterrupted flow of relief to the hungry. But to say that it is in the best interests of the United States to ship food is *not* to give a reasoned analysis of why suspension of *this particular contract* would adversely affect the interests of the United States. And that alone is the statement required under the Competition in Contracting Act.

█ Thus, the Court cannot conclude that AID has examined the legally relevant factors, for it is apparent that AID has not investigated whether a stay of the *Young Contract* would harm the interests of the United States. It is equally apparent to the Court that such a conclusion would not be rational or reasonable, as plaintiff is, and others may be, in a position to offer the services contracted for by Young on an interim basis. Indeed, it is undisputed that AID has in the past extended plaintiff's contract precisely because plaintiff was able to provide services and Young was not. In short, service would seem able to proceed unabated and the Court cannot divine a rational or reasonable basis for the agency's conclusion that the interests of the United States would be protected only if the disputed contractor performed the contract. The conclusion is inescapable: AID's decision not to stay the Young Contract does not meet the standards of the Administrative Procedures Act and must be set aside as contrary to law.

## PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF.

█ The Court has concluded that defendant's action was contrary to law and must be set aside. This does not end the inquiry as to the shape of equitable relief. The standards governing grant of a permanent injunction are clear. The Court must look at the interests of the parties who

might be affected by the decree and must also examine whether the facts and the relevant law indicate that an injunction clearly should be granted or denied apart from any countervailing interest. 11 C.A. Wright and A. Miller, *Federal Practice and Procedure:* Civil § 2942 at 365–67 (1973). And, if the Court determines that equitable relief is warranted, it has great discretion as to its appropriate scope. *Lemon v. Kurtzman,* 411 U.S. 192, 200–01, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973).

Several things are evident. Plaintiff has been harmed by defendant's unlawful failure to stay the Young Contract. And, on the record before it, the Court must conclude that the best interests of the United States favor a stay of the Young Contract—in other words, they favor injunctive relief in this case. But the decree must both treat plaintiff fairly and recognize that the best interests of the United States are at all times paramount and may not always align so precisely with those interests that are peculiarly plaintiff's own.

The Court finds three facts especially relevant to its task. First, plaintiff's contract with AID is renewable at AID's option. Second, that contract was renewed when Young was unable to begin performance. Finally, the terms of the Competition in Contracting Act allow a procurement director to determine that a contract's stay harms United States interests at any time while a protest of that contract is pending.

■ Taken together, these facts dictate the equitable decree to be imposed in this case. Unless and until defendant proffers written reasons why a stay of the Young Contract would be contrary to the best interests of the United States, or that circumstances are so urgent and compelling that they do not permit waiting for resolution of the protest, the Young contract must, as the law requires, be stayed. As long as that stay is in effect, plaintiff's contract will be extended and plaintiff will provide the services that it has been obligated to provide under contract, at the terms laid out in the contract, since July

1985. Defendant may at any time issue a reasoned, written analysis of why plaintiff's provision of those services would be contrary to the best interests of the United States. If defendant should make either finding, its written analysis must be submitted to this Court for approval under the terms of 31 U.S.C. § 3553(d)(2)(A) and the Administrative Procedure Act. Unless and until the Court finds that any such statement complies with the terms of the law, plaintiff will continue to be responsible for providing the services under contract.

Accordingly, the Court will issue an Order, of even date herewith, granting plaintiff's motion and specifying the terms of equitable relief mandated by this Opinion.

### ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons stated therein, it is this 3rd day of February, 1987,

ORDERED that the decision by the head of procurement activity for the Agency for International Development not to stay a contract awarded to Daniel F. Young, Inc., pending resolution of plaintiff's protest of that award is, and is hereby declared to be, contrary to law; and it is

FURTHER ORDERED that the aforesaid contract between defendant and Daniel F. Young, Inc., shall be, and hereby is, stayed until plaintiff's protest of that award is resolved by the Comptroller General of the United States; and it is

FURTHER ORDERED that the contract between plaintiff and defendant for provision of freight forwarding, booking, and chartering services, which expired on January 25, 1987, shall be, and hereby is, extended, at the terms set forth in that contract, until plaintiff's protest of the contract award to Daniel F. Young, Inc., is resolved by the Comptroller General of the United States; and it is

FURTHER ORDERED that, at any time before plaintiff's protest is resolved by the Comptroller General, defendant may issue a reasoned, written finding that explains

why such a continuation of plaintiff's contract would be contrary to the best interests of the United States; and it is

FURTHER ORDERED that, at any time before plaintiff's protest is resolved by the Comptroller General of the United States, defendant may issue a reasoned, written finding that explains why a stay of the Young Contract would be contrary to the best interests of the United States or would occur during a time of such urgent and compelling circumstances significantly affecting the interests of the United States that defendant could not wait for resolution of plaintiff's protest; and it is

FURTHER ORDERED that any written finding by defendant shall be submitted to this Court for a determination as to its lawfulness and shall have the effect of ending the stay on the contract awarded to Daniel F. Young, Inc., or of terminating plaintiff's contract with defendant, only if the Court determines that defendants have acted consistently with 31 U.S.C. § 3553(d)(2)(A) and the Administrative Procedure Act, as interpreted by the Opinion accompanying this Order.