**BLUE CROSS BLUE SHIELD OF TEXAS, INC., Plaintiff,**

v.

**OFFICE OF CIVILIAN HEALTH AND MEDICAL PROGRAM OF the UNIFORMED SERVICES ("OCHAMPUS"), and John E. Montgomery, Director of OCHAMPUS, in his official capacity, Defendants.**

Civ. A. No. 3–95–CV–0983–P.

United States District Court, N.D. Texas, Dallas Division.

June 8, 1995.

Charles C. Frederiksen, Tracy N. Turner, David A. Stephan, Bruce L. Dean, McKenna & Cuneo, Dallas, TX, for plaintiff.

Stafford Hutchinson, Asst. U.S. Atty., Dallas, TX, for defendants.

## ORDER

SOLIS, District Judge.

Presently before the Court are Plaintiff's Application For Temporary Restraining Order And Preliminary Injunction filed on May 24, 1995, Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment filed on May 26, 1995, Plaintiff's Reply To Defendants' Motion To Dismiss And Opposition To Injunctive Relief filed on May 31, 1995, Defendants' Notice Of Filing Of Declarations filed on June 2, 1995, and Plaintiff's Response To Defendants' Declarations filed on June 5, 1995; and Foundation Health Federal Services, Inc.'s Motion To Intervene filed on May 26, 1995, Plaintiff's Response filed on May 26, 1995, Defendant's Response filed on June 2, 1995, and Foundation's Reply filed on June 2, 1995.

BACKGROUND

OCHAMPUS is the United States agency ("Agency") designated by the Department of Defense to administer a civilian health and medical care program for retirees and the spouses and dependent children of active duty, retired and deceased service members. Blue Cross is the unsuccessful bidder on a government contract to provide health care services for OCHAMPUS in Region 6 serving the States of Texas, Oklahoma, Louisiana, and Arkansas. The contract was awarded to Foundation Health Federal Services, Inc. ("Foundation").

An unsuccessful bidder is entitled to protest these types of governmental contract awards to the General Accounting Office ("GAO") pursuant to the Competition in Contracting Act of 1984 ("CICA"), 31 U.S.C. § 3551 *et seq.* CICA provides that a protest of an award automatically stays the award while the protest is pending. 31 U.S.C. § 3553(d)(3)(A). However, CICA also provides that the head of the procuring activity may authorize the performance of the contract notwithstanding a protest if certain requirements are met. 31 U.S.C. § 3553(d)(3)(C). In this case, the Director of OCHAMPUS ("Director") authorized Foun-

dation's performance of the contract notwithstanding Blue Cross's protest.

Blue Cross is not raising the merits of its bid protest in this action. Rather, Blue Cross is requesting that the Court stay the performance of the contract until the GAO resolves the protest.

## STANDARD OF REVIEW

■ Although Defendants argue that the Director's decision to override the automatic stay is not subject to judicial review, the Court finds that it has jurisdiction to review this case. The Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, generally authorizes judicial review of agency decisions. The APA authorizes a court to set aside as unlawful an agency action that is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

Several federal courts have recognized the authority to judicially review an agency's override decision. For instance, the court in *Universal Shipping Co. Inc. v. United States,* 652 F.Supp. 668 (D.D.C.1987), stated that federal courts must be empowered to review the agency's reasons underlying these findings, otherwise wholly irrational, vindictive, or even blatantly unconstitutional action could proceed unchecked. *Id.* at 674. This Court agrees with the *Universal Shipping* court's reasoning and finds that it does have jurisdiction to review the Director's decision to override the stay.

■ A reviewing court must determine whether the agency's decision was based on the legally relevant factors, or whether the agency made a clear error of judgment. *Motor Vehicle Mfrs. Assn. v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). Furthermore, a reviewing court must also determine whether the agency "offers an explanation for its decision that runs counter to the evidence before the agency." *Id.*

## STANDARD FOR INJUNCTIVE RELIEF

■ A preliminary injunction may be granted only if the moving party establishes each of the following four factors: 1) a substantial likelihood of success on the merits, 2) a substantial threat that failure to grant the injunction will result in irreparable injury, 3) a showing that the threatened injury outweighs any damage that the injunction may cause the opposing party, and 4) evidence to support a finding that the injunction will not disserve the public interest. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.,* 878 F.2d 806 (5th Cir.1989).

## DISCUSSION

CICA provides that:

> If the Federal agency awarding the contract receives notice of a protest in accordance with this section during the period described in paragraph (4)—

> (i) the contracting officer may not authorize performance of the contract to begin while the protest is pending; or

> (ii) if authorization for contract performance to proceed [has already been given], the contracting officer shall immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract.

31 U.S.C. § 3553(d)(3)(A).

Thus, CICA provides for an automatic stay of the contract during the pendency of the protest.

■ However, CICA allows the agency to override the automatic stay if certain requirements are met. Section 3553(d)(3)(C) states that:

> The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)—

> (i) upon a written finding that—

> (I) performance of the contract is in the best interests of the United States; or

> (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.

*Director's Findings*

In this case, the Director issued a memorandum detailing his reasons for overriding the stay. Tab B, Defendants' Declarations. In this memorandum, the Director found that overriding the stay was in the best interests of the United States. Tab B, p. 1. The Director mainly based his decision on the following: 1) the cost to the government of failing to override the stay, 2) the impact of the stay on the implementation of the Uniformed HMO Benefit, and 3) the impact of the stay on other improvements in services to the affected beneficiary population and the military health services system.

*Whether The Current System Is Adequate*

Plaintiff proposes several arguments in support of its request for injunctive relief. For example, in attempting to show a likelihood of success on the merits, Plaintiff asserts that the current system in place can adequately serve Region 6 for the interim time period until a final ruling is granted regarding the protest. Plaintiff asserts that all active or retired military personnel and their dependents may receive free, unlimited health care at existing military treatment facilities. Mahaffey Aff., ¶ 15. Hence, Plaintiff alleges that OCHAMPUS beneficiaries are currently able to receive medical care with no cost, no deductible, no co-payments, no claim filing procedures or other trappings of HMO type plans. *Id.*

However, Defendants claim that the beneficiaries entitled to the free services, as discussed in the Mahaffey affidavit, constitute less than half of all the beneficiaries that will be covered under the new plan. Moreover, Defendants have produced evidence to show that the current system provides care that is restricted to space availability. *See generally,* Long Declaration, Lecholop Declaration.

Specifically, Defendants provided data that showed in 1994, 1041 cases at one facility in Region 6, and 293 cases at another facility, were either not provided in the direct care system, or could not be provided in the direct care system. Lecholop Decl., p. 2. Additionally, at one of the facilities, 5,889 cases in 1994 experienced a wait time for treatment in excess of thirty days. *Id.*

■ The new system will provide the beneficiaries with the opportunity to enroll in a health care plan known as TRICARE Prime. Defendants Response, Tab B, p. 3. The Director stated that the TRICARE Prime program will provide the beneficiaries with improved access to primary care, specialty, and inpatient services at lower out-of-pocket costs than would be the case under the standard CHAMPUS program. *Id.* After reviewing the evidence in this case, the Court finds that Plaintiff has failed to show that the Director's finding on the issue of the inadequacy of the current system was made with a clear error of judgment. *Motor Vehicle Mfrs. Assn. v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). Furthermore, Plaintiff has failed to support its contention that the Director's explanation for his decision ran counter to the evidence before the agency. *Id.*

*Whether The Agency Acted Inconsistently*

In another attempt to show that it would likely succeed on the merits, Plaintiff asserts that OCHAMPUS is acting inconsistently because it did not seek to override the stay in a protest involving the provider of health care benefits for Regions 9, 10, and 12. Plaintiff alleges that the contract involving Regions 9, 10, and 12 was also subject to a bid protest, but that the agency did not override the stay. Moreover, Plaintiff states that the so-called "Uniform Benefit Amendment" feature of the program is not consistent between the two contracts because although the Uniform Benefit has not been implemented in Regions 9, 10, and 12, the Director mentions the advantages of the "Uniform Benefit" as part of the reasoning as to why he decided to override the stay in Region 6. Hence, Plaintiff argues that the Director's decision is arbitrary and capricious.

However, the circumstances in Region 6 differ from the facts involved in Regions 9, 10, and 12. In Regions 9, 10, and 12, Aetna Government Health Plans, Inc. ("Aetna") is the incumbent contractor. A new contract was awarded to QualMed Inc. The new contract has been protested, and it is currently pending before the GAO. Montgomery Decl., p. 2.

Aetna's current contract requires delivery of the "triple option" benefit included with

the managed health care services. This triple benefit consists of: 1) TRICARE Standard, an indemnity type health benefits program; 2) TRICARE Extra, a preferred provider network; and 3) TRICARE Prime, an HMO-like option. Montgomery Decl., p. 2. In these regions, Aetna is currently providing managed health care to CHAMPUS beneficiaries, and it is providing Prime benefits. *Id.* Furthermore, the contracting officer directed Aetna to implement the Uniform Benefit as a modification to the Prime program on October 1, 1995. *Id.*

In Region 6, no incumbent managed care contractor exists for the large majority of beneficiaries. *Id.* The current contractor only provides claims processing and related services. *Id.*

■ Thus, some of the concerns that the Director has regarding Region 6 were not present with respect to Regions 9, 10, and 12 because the incumbent contractor was able to provide similar benefits under the Triple Option program during the interim time period for resolving the protest. However, in Region 6, the Triple Option benefits, or comparable options to the benefits contemplated in the new contract, are not available to the beneficiaries during the interim time period. In fact, the two cases that Plaintiff relies on, *Universal Shipping Co. Inc. v. United States*, 652 F.Supp. 668 (D.D.C.1987), and *DTH Management Group v. Kelso*, 844 F.Supp. 251 (E.D.N.C.1993), both involved situations that enabled an incumbent contractor to provide similar benefits that were contemplated in the new contract.[1] Accordingly, the Court finds that the Director's decision to override the stay in Region 6 was not arbitrary or capricious because different circumstances existed with Region 6 as compared to Regions 9, 10, and 12. Furthermore, the Court finds that Plaintiff has failed to show a likelihood of success on the merits required for the granting of injunctive relief.

*Whether Plaintiff Will Suffer Irreparable Harm*

Plaintiff asserts that enabling Foundation to perform on the contract during the bid protest provides Foundation with an unfair business advantage. Plaintiff alleges that Foundation will be able to establish a necessary network of physicians as a basis for the program because Foundation will be afforded the opportunity to use the Region 6 contract, including $17 million available to Foundation in so-called "government subsidies." Plaintiff believes that this result is unfair, and that it constitutes irreparable injury.

■ However, the Court finds that Plaintiff will not suffer irreparable injury. The amount of Plaintiff's potential financial loss due to the competition for the "network" is quite speculative. More importantly with respect to this case, Defendants are acting for what they believe is in the best interests of the United States. This Court will not disturb that action, as long as the decision is reasonable, as opposed to arbitrary and capricious. The collateral consequence of the Agency's decision resulting in potential economic harm to Plaintiff due to the increase in competition is less significant.

The critical result is that Plaintiff has failed to show that the Director's decision was in clear error, or that it ran counter to the evidence in this case. In short, Plaintiff has failed to establish that the Director's decision was arbitrary or capricious.

Accordingly, the Court will deny Plaintiff's application for injunctive relief. As a result, this case is dismissed because nothing remains for the Court's determination. Therefore, Foundation's Motion To Intervene is denied as moot.

It is hereby Ordered that Plaintiff's Application For Temporary Restraining Order And Preliminary Injunction is denied.

It is further Ordered that Foundation's Motion To Intervene is denied as moot. SO ORDERED.

---

1. The subject matter involved with the contract in this case also differs with the two cases relied on by Plaintiff. For example, the *DTH* contract related to housing maintenance and repair services, which one can reasonably conclude is less of a concern for the interim period than providing health care benefits.