**S.J. THOMAS COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–70C.

United States Court of Federal Claims.

Aug. 1, 2000.

Marc Lamer, Kostos & Lamer, Philadelphia, PA, for plaintiff.

Matthew P. Reed, Civil Division, U.S. Department of Justice, Washington, D.C., with whom on the brief were Harold D. Lester, Jr., Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assistant Attorney General, for defendant.

## OPINION

MARGOLIS, Senior Judge.

In this post-award bid protest action, plaintiff S.J. Thomas Company, Inc., challenged the General Services Administration's ("GSA") issuance of a task order to another contractor under a multiple award, indefinite delivery/indefinite quantity ("ID/IQ") task order contract. Plaintiff sought a declaratory judgment that GSA's method of competing the individual task order was in violation of the underlying ID/IQ contract and procurement laws and regulations, a preliminary injunction enjoining GSA from implementing the task order as issued, and a judgment directing GSA to award the task order to plaintiff. The parties settled this underlying dispute. The case is now before the Court on plaintiff's application for attorneys' fees and expenses in the amount of $21,805.50 under the Equal Access to Justice Act. After considering the parties' written arguments, the Court concludes that plaintiff is not entitled to fees under the Equal Access to Justice Act.

## FACTS

The underlying dispute arises out of a multiple award ID/IQ task order contract awarded by GSA in response to solicitation number GS–03P–97–AZD–1011 (the "Solicitation"). Defendant intended to make multiple awards based on a best value evaluation, considering both technical capability and price. The solicitation provided that individual jobs under the resultant ID/IQ term contracts would be awarded via task orders, and required that all awardees of the initial ID/IQ term contracts be provided a fair opportunity to compete for task orders valued at more than $2,000.

GSA awarded the contract to plaintiff and two other contractors. Notwithstanding that the total of plaintiff's line item prices in its ID/IQ contract was significantly lower than that of the other contractors, plaintiff lost several task orders to the other offerors. By letters dated March 17 and March 18, 1998, plaintiff asked GSA if GSA was permitting the other contractors to bid prices in their task order proposals that were lower than the line item prices in their respective ID/IQ contracts, or if GSA was otherwise permitting bottom line discounts. In response, GSA confirmed that it was permitting all offerors to discount their original line item prices for the purpose of task order submissions:

> The method of procurement utilizing the technique of negotiations, allows the contractor the opportunity to lower his originally priced line items, or to offer a discount. The contract provides that the contractors are encouraged to bid lower percentages when orders are competed. The government then determines whether accepting the offer is in its best interest.

April 1, 1998 Letter from Contracting Officer Doreen Waltrich to Steven J. Thomas. In a subsequent letter, GSA clarified its earlier response as follows:

> [T]he government's position is that accepting discounts offered on the bottom line price of the contractor's proposal is in its best interest, if it offers the best value. The contractor is not changing his previously priced line items, but is offering a more competitive price based on the individual work order requirements.

April 16, 1998 Letter from Contracting Officer Doreen Waltrich to George P. Cordes. GSA additionally told plaintiff that "although discounts are not encouraged, we will accept them if offered since there is nothing in the contract that precludes us from doing so." December 22, 1998 Letter from Robert J. Scaramuzza, GSA Philatlantic Realty Services District to George P. Cordes.

In January 1999, GSA issued a request for proposals. GSA advised plaintiff on February 9, 1999 that the task order had been awarded to one of the other two contractors. GSA further advised plaintiff that the successful offeror had discounted its price for the 16 non-negotiated line items in its task order proposal to lower its overall price.

On February 16, 1999, plaintiff filed this action seeking a declaratory judgment that GSA's practice of permitting offerors to discount line item pricing in task order proposals is improper and also seeking a preliminary injunction enjoining GSA from proceeding with the implementation of the early February 1999 task order award. Plaintiff contends that awarding task orders based on discounted line item pricing is contrary to the procedures set forth in the original Solicitation and resultant ID/IQ contracts.

The parties settled the underlying dispute on October 25, 1999. The Settlement Agreement signed by the parties stated, in relevant part:

> [T]he Contractor(s) may discount pricing of the line items listed in Schedule A of the solicitation by the use of a percentage factor; provided, however, the percentage factor shall apply to all line items identified as necessary for the completion of the work to be performed under the particular work or task order.

Following the settlement, plaintiff filed its amended application for attorneys' fees and expenses under the Equal Access to Justice Act on February 18, 2000.

## DISCUSSION

■ The Equal Access to Justice Act (EAJA) allows a court to award attorneys' fees and expenses to:

> a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action....

28 U.S.C. § 2412(d)(1)(A). EAJA requires that a plaintiff be the prevailing party to receive fees under the Act. In order to be a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant .... [T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The "material alteration" must be to the benefit of plaintiff. This Court has determined that plaintiff has not met its burden.

■ The Court agrees with plaintiff that a party who obtains the relief sought in a settlement can be a prevailing party. *See Taylor Group, Inc. v. Johnson*, 915 F.Supp. 295, 297 (M.D.Ala.1995). However, *Taylor Group* is distinguishable from the facts of this case. In *Taylor Group*, the court issued a temporary restraining order. *Id.* Plaintiff in this case received no such relief from this Court, because plaintiff withdrew its request for a temporary restraining order. The sole question before the Court is whether or not plaintiff actually received in this settlement the relief it sought in its complaint. The Court finds that it did not.

The complaint plaintiff had with the procurement when it first presented its case to the Court was that the GSA was violating the terms of the contract by permitting bidders to discount their line-item pricing when bidding on various task orders. The plaintiff asked this Court to enter an order blocking the award of the task order to another contractor and awarding it to plaintiff. The Settlement Agreement in this case did not accomplish that purpose. In fact, the Settlement Agreement explicitly allows the GSA to continue accepting discounted bids. Plaintiff

argues that the Settlement Agreement sufficiently changes the status quo in that it requires discounts to be "across the board," rather than "line-item" discounts. The Court disagrees. Fundamentally, the other contractors are still allowed to bid a price for a task order lower than that which the contractor initially bid. The Court finds that the plaintiff is not the prevailing party under these facts.

## CONCLUSION

The Court concludes that plaintiff was not the prevailing party in this action. Plaintiff, therefore, is not entitled to an award of fees or expenses under EAJA. Plaintiff's application for attorneys' fees and expenses is denied.